## A. Popinaux *v.* The State.

1. Swindling — Fact Case. — See evidence held insufficient to sustain a conviction for swindling.
2. Plea. — Unless the record on appeal shows that a plea was made by or entered for the defendant, the conviction is null.

Appeal from the County Court of Denton. Tried below before the Hon. C. C. Scruggs, County Judge.

The case is fully stated in the opinion. The punishment assessed against the appellant was a fine of ten dollars and imprisonment for ten days in the county jail.

No brief for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

Hurt, J. Aus. Popinaux was convicted of swindling, the amount acquired being of the value of three dollars. The offense is a misdemeanor. The evidence upon which defendant was convicted is as follows: J. H. Howry, the prosecutor, testified: "I was then engaged in a small retail business, including the sale of cigars. I am acquainted with defendant, Aus. Popinaux. On the 18th day of February, 1881, he came into my room, and he and John Skaggs got into a game of dice. They threw dice for the cigars. John Skaggs won 25 cents' worth of cigars of defendant and defendant paid me for the cigars. They played again and John Skaggs won 25 cents' worth of cigars of defendant; defendant paid me for them. They played again, until Skaggs won 50 cents' worth of cigars of defendant. I told defendant I would like for him to pay up for them, before getting more. He remarked that I need not be alarmed, that he had the money to pay for them, and that he was going to continue the game until he lost $3.00 which he had in his pocket, and that he would pay for them before he left the room.

Defendant got from me sixty cigars, worth 5 cents apiece. When he played until he lost $3.00 he quit the game. I then demanded my money. Defendant said he did not have it, but would go home and get it. He went off; did not come back that evening. I sent Ned. Hembry to him to get the money that evening, but did not get it. I filed an affidavit against him that evening."

Cross-examined. "Defendant and Skaggs were playing at a game of dice for the cigars; the understanding was that the loser would pay for them. I understood that while defendant and Skaggs were throwing dice, that the game was limited to $3.00, and that the loser would pay for the cigars; that was the custom. I know the game was limited to $3.00. (Here witness said that he had got himself into a tangle, and had told it wrong.) That he was expecting Aus. Popinaux to pay for the $3.00 worth of cigars; that he relied upon defendant's statement that he had the money and would pay him before he left the house. If I had not believed his statement, I would not have let him have the $3.00 worth of cigars. . . Defendant came to me next morning and said he had come to pay me for the cigars, and said something about being too late. I told him he was too late; that he could not pay for them then; I had commenced a prosecution against him. He did not tender me the money. Parties had been throwing dice in my room before defendant came in. I do not know that defendant did not have $3.00 on his person; never examined. He is not in the habit of having money, though this is the first time I saw him to know him. He has not been about me since. The place where the defendant obtained the cigars from me was in Denton county, Texas. He has never paid me for the cigars. The cigars were my property."

James Oldham, a State's witness, on oath says: "I was present on the 18th day of February, in the room of Mr.

Howry, where defendant and John Skaggs were throwing dice for the cigars. Skaggs won the cigars off of defendant. Skaggs first won 25 cents' worth of cigars of defendant. Defendant paid for them. They continued the game, until Skaggs won 25 cents' worth of cigars again of defendant. Defendant paid for them. They continued the game until Skaggs won 50 cents' worth of cigars off of defendant; when Mr. Howry told defendant he would have to pay up. Defendant remarked that Howry need not be uneasy, that he (defendant) had the money to pay for the cigars. He did not say that he had the money on his person, or where. I did not hear them say the game was limited to $3.00. It might have been said when defendant quit the game. He said he would go home and get the money. I heard defendant tell Howry that he had the money and would pay for the cigars before he left the room. I did not hear him say where he had the money; he might have said so and I not have heard it."

John Skaggs, introduced in behalf of defendant, says: "I am the party who threw dice with defendant for cigars on the 18th day of February, 1881, in Mr. Howry's room. I had been in the room throwing dice with various parties, and when defendant came in, I bantered him for a game. We played a while until defendant won some cigars off of me. I remarked then if he would stick to me, he might win a box of cigars. We continued the game until I won $3.00 worth of cigars off of defendant. Defendant did not say he had $3.00 in his pocket or anywhere else. He did not limit the game to $3.00. The game was not limited to any amount. I heard all that was said; was present all the time till defendant left the room. After I had won some cigars off of defendant, Mr. Howry wanted him to settle up for what he had got. Defendant told him not to be uneasy; that he would pay for the cigars. When defendant quit the game he said

he would go home and get the money, and return and pay for them."

Cross-examined. "I did not tell Mr. Howry I would be a good State's witness, last week; nor any other time that I would be a good State's witness."

J. H. Howry, re-examined. "Last week or two John Skaggs told me he would be a good State's witness. I did not have him subpœnaed, because I thought he was busy in the game, and might not remember what was said. I had James Oldham subpœnaed for me."

If the witnesses for the defendant told the truth, then there was no offense committed by the defendant. The conviction of defendant must have been upon the evidence of Howry alone, and the evidence of the two witnesses for defendant utterly disregarded. Was the evidence of the prosecutor Howry sufficient to sustain the verdict? The defendant had met and completely crushed the case made by the prosecution, and that too by two witnesses. Not only so, but the witness Howry deliberately swears to facts about which there could not have been a mistake, facts reaching the vital point in the case, and which, if true, repelled all inference of guilt of the offense charged. This witness, however, was very suddenly impressed with the fact that he (as he says himself) had "got himself in a tangle and had told it wrong." What produced this tangle? Why had he told it wrong? Was the subject one in regard to which tangles and mistakes would probably and possibly occur? This witness knew the moving cause which induced him to part with his property. Most evidently, if he looked to the defendant for his pay, he could not have been mistaken about it. This was not only a very badly "tangled" witness, but rash in the extreme. Hear him on the pecuniary condition of the defendant! He says: "He was not in the habit of having money,— though this was the first time I saw him to know him. He has not been around me since."

While it is true that the jury are the judges of the credibility of the witnesses and the weight to be given to their testimony, still the defendant's guilt should at least be made reasonably to appear; and in passing upon this question, to wit, the guilt of defendant, the spirit, manner, contradictions, etc., of the witness should be looked to. If not, the jury, having the right to disregard the testimony of defendant's witnesses utterly, the defendant would be placed beyond all power of defense. We are not satisfied with this conviction. The judge below should have granted the motion for a new trial.

There is another view in which we desire to present this case. The defendant returned next morning and proposed to pay for the cigars. At the time he acquired them, did he intend to defraud and cheat the prosecutor? We cannot present this question and reasoning upon the same in a better light (nay not as clear) than that in which it is expounded by Judge Anderson in *Fay* v. *The Commonwealth*, 28 Grattan (Va.), 912, a case we think quite analogous to the one before us. The facts of that case are these: " The only proof of any false pretense in this case, or that the prisoner made any statement that was not strictly true, is that he said he was the owner of the lots. It appears from the certificate of facts that the prisoner had an interview with Bowden, the owner of two lots of land, in which Bowden expressed his willingness to sell the two lots of land together for $300, but declared that he would not sell them separately, and that afterwards, the prisoner sold one of them to Nelson Randolph, a colored man, for $200, telling him he owned them; that Randolph paid him $50 in cash, and agreed to pay the balance in monthly installments of $15 each; that a few days after the sale to Randolph he went to Bowden and completed the contract of purchase with him, paying him in cash fifty dollars, the money or the amount he had received from Randolph, and executing his notes for the

·deferred payments, and entering into articles of agree-ment with him setting out the terms of the sale and pur-chase, informing him that he had sold each of the lots for two hundred dollars, an advance of one hundred dollars on the price he was to pay for them, and requesting him, when the purchase money was paid, to convey the lots respectively to the vendees. The court is further of opin-ion that unless the selling was by false pretense, *with in-tent to defraud the buyer*, the case is not within the statute. It follows that the fraudulent intent must have existed at the time the false pretenses were made by which the money was obtained." The principles enunciated in this opinion can be readily applied to the case at bar.

We are of the opinion that the court below should have granted a new trial, and in failing to do so it committed an error for which the judgment will be reversed and the cause remanded.

In addition to the above reasons for reversal, there is no plea for defendant apparent of record, and on this ground the judgment of conviction is a nullity.

*Reversed and remanded.*